2157

Art BALL, Joan Ball, and Carl Hanson, Respondents v. CANADIAN AMERICAN EXPRESS COMPANY, INC., John Sorrell, and Grace Sorrell, Appellants.

(442 S.E. (2d) 620)

Court of Appeals

*S. Jahue Moore,* of *Kirkland, Wilson, Moore, Allen, Deneen & Taylor,* West Columbia, *for appellants.*

*John A. O'Leary* and *Douglas N. Truslow,* Columbia, *for respondents.*

Heard Dec. 7, 1993.

Decided Mar. 21, 1994. Reh. Den. May 5, 1994.

BELL, Judge:

Art Ball, Joan Ball, and Carl Hanson sued Canadian American Express Company, Inc., John Sorrell, and Grace Sorrell.[1] The complaint alleged claims for breach of contract, conversion, fraud, negligent misrepresentation, unfair trade practices, and reformation. Can-Am counterclaimed for overpayment to the Balls. At the conclusion of the trial, the court allowed the Balls to amend the Complaint to allege breach of contract accompanied by a fraudulent act. The court awarded the Balls $11,419.98 in actual damages for breach of contract and $20,000 in punitive damages for breach of contract accompanied by a fraudulent act. The court also found the Sorrells in wilful contempt of court for their failure to comply with court-ordered discovery and awarded attorneys' fees and costs to the Balls in the amount of $16,168.87. The counterclaim was denied. The Sorrells moved for reconsideration, which was denied. Can-Am and the Sorrells appeal from the judgment of breach of contract accompanied by a fraudulent act alleging the circuit court erred on several grounds. We affirm in part and reverse in part.

Since 1982, the Balls, as independent truckers, had been contracting with Can-Am, a truck brokerage business, for the transport of loads to various location. Can-Am is owned and operated by the Sorrells, who acquire the loads from shippers,

---

[1] For convenience, Can-Am and the Sorrells will be referred to collectively as "Can-Am" in this opinion unless the context clearly indicates otherwise.

negotiate freight prices, bill the shippers, and collect the money. The Sorrells then deduct their broker's commission (usually 10%) and pay the truckers the remaining balance.

In 1990, Joan Ball began comparing disbursements Can-Am received from shippers with the settlement checks Can-Am sent the Balls on these shipments. She found the invoices sent to shippers and the settlement checks Can-Am paid to the Balls did not match. This led her to suspect Can-Am was underpaying the Balls. She confronted John Sorrell with her suspicions. At that meeting, Sorrell wrote her a check for approximately $2,300.000. She testified that Sorrell also admitted Can-Am had "cheated" the Balls. In all, the Balls believed Can-Am shorted them on 109 loads. On this basis they brought suit against Can-Am and the Sorrells.

I.

Can-Am first argues the referee erred in allowing the Balls to amend their complaint after trial to include a cause of action for breach of contract accompanied by a fraudulent act.

Motions to amend pleadings to conform to proof may be made upon motion of any party at any time, even after judgment, and are within the sound discretion of the trial judge. *See* Rule 15(b), SCRCP. Ordinarily, amendments to conform to proof should be liberally allowed. *Soil & Material Engineers, Inc. v. Folly Associates*, 293 S.C. 498, 361 S.E. (2d) 779 (Ct. App. 1987). However, if late amendment of the pleadings would cause prejudice to the opposing party, the court should either deny the amendment or grant a continuance reasonably necessary to allow the opposing party to meet the amendment. *National Time Share Sales, Inc. v. Maritime Ltd. Partnership*, 297 S.C. 43, 374 S.E. (2d) 678 (1988). Prejudice occurs when the amendment states a new claim or defense which would require the opposing party to introduce additional or different evidence to prevail in the amended action. *See, e.g., South Carolina State Highway Department v. Rural Land Co.*, 250 S.C. 12, 156 S.E. (2d) 333 (1967).

In this case, the referee erred in granting the amendment. He reasoned that no separate and distinct claim was introduced into the case by adding breach of contract accompanied by a fraudulent act, because the complaint

already alleged claims for breach of contract and for fraud. In his view, breach of contract accompanied by a fraudulent act "is simply a blend of [those] two causes of action," so amendment would entail no surprise to Can-Am.

■ Breach of contract accompanied by a fraudulent act is not simply a combination of a claim for beach of contract and a claim for fraud. The action for breach of contract accompanied by a fraudulent act is not based on the same elements as an action for fraud (deceit). *Harper v. Ethridge,* 290 S.C. 112, 348 S.E. (2d) 374 (Ct. App. 1986). A claim of fraud goes to the making of the contract. *See, e.g., Darby v. Waterboggan of Myrtle Beach, Inc.,* 288 S.C. 579, 344 S.E. (2d) 153 (Ct. App. 1986). It is based on the theory that the innocent party was induced to enter a contract he would not otherwise have made because he relied on a false representation by the fraudulent party. *Id.* In other words, a claim for fraud relates to the making of the contract.

■ Breach of contract accompanied by a fraudulent act is different. It requires proof of fraudulent intent relating to the breaching of the contract and not merely to its making. *Harper v. Ethridge, supra.* Such proof may or may not involve false representations. *See id.* (the fraudulent act is any act characterized by dishonesty in fact, unfair dealing, or the unlawful appropriation of another's property by design).

It follows that a party defending a suit for fraud would introduce evidence relating to the making of the contract. On the other hand, a party defending a suit for breach of contract accompanied by a fraudulent act would introduce evidence relating to the breach of contract. Thus, if a claim for fraud in the inducement is converted after trial into a claim for fraud in the breach, the defending party will have presented the wrong kind of evidence to defend successfully against the claim. Unless he is allowed to prepare and introduce additional evidence relating to fraud in the breach, his case is manifestly prejudiced.

For these reasons, the referee erred in granting the motion to amend the pleadings after trial. We reverse the judgment for breach of contract accompanied by a fraudulent act and the accompanying award of punitive damages.

## II.

John and Grace Sorrell argue that the referee erroneously imposed personal liability on them. They contend the Balls dealt with Can-Am, a corporation, and that only the corporation is liable for any breach of contract.

The Balls had the burden of proving that Can-Am's corporate identity should be disregarded in order to impose individual liability on the Sorrells. *Sturkie v. Sifly,* 280 S.C. 453, 313 S.E. (2d) 316 (Ct. App. 1984). Despite repeated discovery requests for Can-Am's corporate records, none was ever produced. As the referee noted, the Sorrells were unable or unwilling to provide appropriate documentation of Can-Am's corporate status at trial. In these circumstances, the absence of evidence created a strong inference that corporate formalities were not observed, that the corporation was a shell, and that the Sorrells ran the business as their own. We affirm the judgments against the Sorrells personally.

## III.

The court found that Can-Am's failure to comply with court-ordered discovery added to the Balls' costs in bringing this action and awarded attorneys' fees. Under Rule 37(a)(4), SCRCP, the court shall require the payment of reasonable expenses incurred in obtaining the order compelling discovery, including attorneys' fees. *Thornton v. Thornton,* 294 S.C. 512, 366 S.E. (2d) 37 (Ct. App. 1988). The court did not abuse its discretion in awarding attorneys' fees in this case.

Can-Am also asserts the use of affidavits alone as a basis of awarding attorneys' fees was improper, because it deprived them of the opportunity to cross-examine opposing counsel as to costs. Attorneys for both parties agreed to submit affidavits to the court in lieu of testimony. Can-Am's counsel was given an opportunity to object to the use of affidavits instead of testimony, yet made no objection. Instead he stated the submission of affidavits was "agreeable." Failure to object at trial waives the right to object on appeal. *Cf. Cogdill v. Watson,* 289 S.C. 531, 347 S.E. (2d) 126 (Ct. App. 1986).

## IV.

The court found Can-Am in contempt for failure to obey court-ordered discovery. Wilful violation of a discovery order may support a finding of contempt. Rule 37(b)(1), SCRCP. A determination of contempt is within the sound discretion of the circuit judge and is subject to reversal where based on a finding that is without evidentiary support or where there has been an abuse of discretion. *Pratt v. South Carolina Department of Social Services*, 283 S.C. 550, 324 S.E. (2d) 97 (Ct. App. 1984). In this case, counsel for Can-Am admitted that his clients had refused to comply with discovery orders before January 30, 1992. Although compliance improved after that date, the record shows Can-Am was still producing discovery material as late as the trial itself. In addition, Can-Am never complied with certain discovery requests. For these reasons, the referee was well within his discretion in holding Can-Am in contempt of court.

In sum, we reverse the judgment for breach of contract accompanied by a fraudulent act and the award of punitive damages. We affirm the judgment in all other respects.

Affirmed in part, reversed in part.

SHAW and CONNOR, JJ., concur.